

# THE ATTORNEY GENERAL
# OF TEXAS

GROVER SELLERS
~~XXXXXXXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Bascom Giles
Commissioner of General Land Office
Austin, Texas

Dear Sir:

Opinion No. O-6166
Re: Reservation and disposition of
excess acreage of river bed in
award of land validated by Small Land
Bill, Art. 5414a, V.A.C.S., prior to
patent.

We acknowledge receipt of your opinion request which reads as follows:

"A request has been made of the General Land Office for the issuance of patents on two tracts of land within Section 144, Block D, H. & T.C. Ry. Co. Survey in Stonewall County. Our records reveal the facts to be the following:

"That the Houston and Texas Central Railway Company having completed a portion of its road bed was, by Jacob Kuechler, Commissioner of the General Land Office, on July 1, 1872, issued Land Scrip Certificate No. 30/2554, said company being entitled under the provisions of its charter and the general laws governing the same to 640 acres of land to be located upon any of the unreserved, vacant and unappropriated public domain of the State of Texas;

"That by virtue of said Land Scrip Certificate No. 30/2554 field notes covering 640 acres of land, designated as Section 144, Block D, were compiled from a survey made October 18, 1872, and filed in the General Land Office on November 23, 1872;

"That the SE/4 of Section 144, Block D, as containing 160 acres of land, was awarded on October 8, 1894, to Henry Anderson on his application received in the Land Office on September 27, 1894;

"That the N/4 of Section 144, Block D, as containing 160 acres of land, was on March 12, 1898, awarded to W. L. Vanleer on his application filed in the Land Office on November 26, 1897;

"That on October 25, 1901, there were filed in the
General Land Office corrected field notes made from a sur-
vey of May 9, 1901, showing said Section 144, Block D, to
contain 655.8 acres;

"That on July 27, 1903, the S/2 of the N/2 of Section
144, Block D, as containing 160 acres of land, was awarded to
E. C. Marr on his application received July 23, 1903;

"That field notes covering the SE/4 of Section 144,
Block D, showing same to contain 160 acres of land, were com-
piled from a survey of November 2, 1912, and approved on
December 16, 1912;

"That the said SE/4 of Section 144, Block D, having
been paid in full for 160 acres, was patented on February 7,
1913, to Henry Anderson by Patent No. 597, Volume 45;

"That the SW/4 of Section 144, Block D, as containing
160 acres, was awarded to C. E. Pinckney on October 6, 1914,
on his application filed in the Land Office on August 18, 1914;

"That field notes compiled on March 27, 1936, covering
the SW/4 of Section 144, showing same to contain 163.8 acres,
were approved on March 27, 1936;

"That the said SW/4 of Section 144, having been paid in
full for 163.8 acres, was patented to C. E. Pinckney on April
3, 1936, by Patent No. 357, Volume 61-A.

"With the request for patents there were submitted sep-
arate field notes covering the N/4 of Section 144, as containing
160 acres and the S/2 of the N/2 of Section 144 as containing
172 acres. The field notes for the north 160 acres were returned
for correction and the field notes for the 172 acre tract are
being held in this office.

"The original field notes of Section 144, made from a sur-
vey of October 18, 1872, reveal that the Salt Fork of the Brazos
River flows through a portion of Section 144, entering at a point
in the SW corner of the SE/4 and leaving the section at a point
approximately 500 varas north of the SW corner of the SW/4 of
Section 144. The corrected field nots made from a survey on May
9, 1901, called for the west line of Section 144 to cross the
Salt Fork of the Brazos River at approximately 1223 varas north
of the SW corner of Section 144.

"In view of the 'Small Land Bill,' Acts of the 41st
Legislature, 1929, Page 298, Chapter 138, codified as Arti-
cle 5414a, V.A.C.S., and assuming that the area of that
part of the river bed contained within the boundaries of the
S/part of the N/2 equals or exceeds the excess acreage con-
tained in Section 144 in its entirety, I respectfully re-
quest your opinion on the following questions:

".  .  ."

Your first question is as follows:

"1.  In the patenting of the S/part of the N/2, should
there be reserved to the State out of that part of the river
bed contained within the boundaries of the S/part of the N/2
an area equal to the entire excess of the whole survey, or
should the patent thereon reserve only an area equal to the
excess in this subdivision?"

In the case of State v. Bradford, 50 S.W. (2) 1065, the
Supreme Court in holding the Small Land Bill (Art. 5414a, V.A.C.S.)
constitutional held that no excess acreage would be recognized under the
Act. In this connection we set out the proviso found in the second sec-
tion of the Act:

"Provided that nothing in this Act . . . shall
relinquish or quitclaim any number of acres of land
in excess of the number of acres of land to said pat-
entees or awardees in the original patents granted
by the State."

Section 144, Block D, as originally surveyed, and according to
the field notes filed in the General Land Office in 1872, contained 640
acres of land.  The corrected field notes filed in 1901 showed Section 144
as containing 855.8 acres of land.

The South 1/2 of the North half of Section 144, as containing
160 acres of land, was awarded to E. C. Marr on July 23, 1903.  However,
the recent request for patent on this land is based on field notes calling
for 172 acres of land.  This represents an excess of 12 acres of land in
this quarter section over and above the number of acres called for in the
original award of 1903.

The Salt Fork of the Brazos River flows through a portion of
Section 144, and partly across the south one-half of the north half of
the section.  The lines of the original survey of Section 144 crossed
the river, which is navigable in law, as did the lines of the quarter
section under discussion here.

There is no doubt but that the original survey was validated by the enactment of the Small Land Bill. However, as we construe the Act, as it relates to this land, it validated only the 640 acres called for in the original field notes. Likewise, the original award in 1903 of the south half of the north half of Section 144 was validated, but only to the extent of the 160 acres of land called for in the original award. Heard et al v. Town of Refugio, 103 S.W. (2d) 728.

The original award of 1903 having been validated to the extent of 160 acres of land, and the full amount of the purchase price having been paid, the awardee is entitled to a patent to this land when it is determined with exactness what land is to be included in the patent.

Before the patent may be issued it will be necessary to determine the number of acres in that part of the bed of the river that is located in the quarter section involved. If after a survey it is found that the bed of the river contains twelve acres, the total amount of the excess, or less than 12 acres, then the patent should issue reserving the whole of the bed of the river within the quarter section to the State. On the other hand, should the bed of the river contain more than the 12 acres excess, the applicant for patent is entitled to a sufficient part of the river bed to give him his full complement of 160 acres as called for in the original award of 1903.

With respect to your first question, we answer that a survey should be made of that part of the bed of the river as located in the south part of the north half of Section 144 to determine the number of acres of land it contains. Then, if necessary, a partition to be effected on the excess in that subdivision only, without considering the excess in the whole survey. A patent may then be issued to include or exclude the bed of the river, or a divided part of it, as the facts may be.

Your other question is as follows:

"(a) If the State is entitled to reserve the excess out of the river bed, should the reservation be an undivided interest or a separate parcel? (Refer to your Opinion Number O-5635 dated November 8, 1943).

"(b) If the State is entitled to a separate parcel, who is authorized to represent the State in the partitioning?"

We reaffirm our Opinion No. O-5635 under date of November 8, 1943, and hold that a reservation by the State of a part of the bed of the river should be a divided part. It is our opinion that a patent may not be issued covering an undivided interest in the land.

In the event a partition of the bed of he river is necessary, such partition should be effected by judicial proceeding.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

/s/ Jack W. Rowland

Jack W. Rowland
Assistant

JWR:BT:egw

APPROVED APR 10, 1945
/s/ CARLOS ASHLEY
FIRST ASSISTANT
ATTORNEY GENERAL

This opinion considered
and approved in limited
conference.